**TEXAS SHRIMP ASSOCIATION, et al.**

v.

**William M. DALEY, et al.**

**No. CIV. A. G–97–343.**

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 7, 1997.

Michael K. Bell, Bell & Murphy, Houston, TX, James P. Walsh, Davis Wright Tremaine, San Francisco, CA, for Plaintiffs.

Daniel David Hu, U.S. Attys. Office, Houston, TX, for Defendants.

## ORDER GRANTING MOTION TO DISMISS

KENT, District Judge.

Plaintiffs, the Texas Shrimp Association ("TSA") and its executive director, bring this suit seeking declaratory and injunctive relief. Specifically, Plaintiffs allege that the Federal Defendants have not acted in conformity with various provisions of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq., and ask this Court to force the Defendants to do so. Now before the Court is Defendants' Motion to Dismiss of August 25, 1997. For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED.

## I. FACTUAL SUMMARY

The ESA, one of the most stringent environmental laws, was enacted by Congress in an attempt to "halt and reverse the trend toward species extinction, whatever the cost." *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 194, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117 (1978). Under the ESA, the Secretary of Commerce or the Secretary of the Interior is charged with determining whether a certain species qualifies as "endangered" or "threatened." [1] Once a species is so listed, it is afforded certain protections under the ESA, and federal agencies assume special obligations to conserve and protect the listed species. *See* 16 U.S.C. § 1536(a)(1). Not only must the Secretary of Commerce determine the status of a certain species, but he must also designate a "critical habitat" for any listed species if that species is listed after November 10, 1978. *See id.* §§ 1533(a)(3)(A); 1532(5)(B) (permitting, but not mandating, designation of critical habitats for species already listed at the time the critical habit provision was added to the ESA). All five species of sea turtles found in United States waters (loggerhead, leatherback, green, hawksbill, and Kemp's ridley) are listed as either endangered or threatened under the ESA. *See* 50 C.F.R. §§ 222.23(a), 227.4. All were listed prior to November 10, 1978. *See* 50 C.F.R. § 17.11. [2]

Under the ESA, any "taking" of an endangered species is prohibited. *See id.* § 1538(a)(1)(B). [3] This prohibition extends to the taking of threatened sea turtles. *See* 50 C.F.R. § 227.71(a). However, "incidental takes" of listed species—takings not directed at the species itself but incidentally arising from otherwise lawful activities—may be authorized by the Secretary subject to certain conditions. *See* 16 U.S.C. § 1539(a)(1)(B); 50 C.F.R. § 402.02.

■ To ensure that federal agency actions "are not likely to jeopardize the continued existence of any endangered species," the ESA requires any federal agency to consult with the Secretary with regard to any action

---

1. The Secretary of the Interior is generally responsible for all terrestrial species, while the Secretary of Commerce is responsible for most marine species. *See* 16 U.S.C. § 1533(a)(2). Because this action involves sea turtles in the water, the Secretary of Commerce bears the responsibility under the ESA. An "endangered species" is a species which is in danger of extinction throughout all or a significant portion of its range. *See id.* § 1532(6). A "threatened species" is a species which is likely to become endangered within the foreseeable future throughout all or a significant portion of its range. *See id.* § 1532(20).

2. Critical habitat has been designated for two of the five listed sea turtle species. *See* 50 C.F.R. §§ 17.95(c); 226.71. Citing *Natural Resources Defense Council v. United States Dep't of the Interior*, 113 F.3d 1121 (9th Cir.1997), Plaintiffs argue that the failure to designate critical habitats for the remaining turtle species is a violation under the ESA.

3. To "take" is to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

it authorizes, funds, or carries out, if that action may affect any endangered or threatened species. *See* 16 U.S.C. § 1536(a)(2) (requiring consultation); *See* 50 C.F.R. § 402.02 (defining agency action). For actions that may affect certain species, including sea turtles while in the water, the National Marine Fisheries Service ("NMFS") is designated as the agency with which the "action" agencies must consult. *See* 50 C.F.R. § 402.01(b). After the consultation between the NMFS and the action agency, the NMFS must issue a written biological opinion detailing how the agency action will or does affect the listed species. The opinion must also include NMFS's opinion as to whether the action is likely to jeopardize the continued existence of the listed species. *See* 16 U.S.C. § 1536(b)(3)(A). If the NMFS concludes the action is likely to jeopardize the continued existence of the listed species, it must suggest "reasonable and prudent alternatives" which can be taken by the action agency to ensure its actions do not jeopardize the continued existence of the listed species. *See id.* If the NMFS concludes the proposed action will not jeopardize the continued existence of the listed species, or provides the action agency with any reasonable and prudent alternatives, and concludes that an incidental taking of the species may occur, the NMFS must issue an "incidental take statement" containing reasonable and prudent measures necessary or appropriate to minimize the impact of the incidental take of the species. *See id.* § 1536(b)(4). This statement must also contain the terms, and conditions that must be complied with by the action agency in order to implement the reasonable and prudent measures necessary to minimize the impact of the incidental take. *See id.* If the action agency complies with the terms of the statement, any taking contemplated in the statement is not considered a prohibited taking. *See id.* § 1536(*o*)(2). Under the ESA, NMFS also has an affirmative obligation to "conserve" sea turtles. *See id.* § 1532(3). Compliance with this duty is subject to review for abuse of discretion. *See Tennessee Valley Authority*, 437 U.S. at 185, 98 S.Ct. at 2293.

The TSA is an association of commercial shrimp trawling vessels operating in Texas waters and in the Exclusive Economic Zone of the United States. The TSA has been involved in multiple cases challenging the federal government's policies and enforcement of turtle protection regulations. *See, e.g., Center for Marine Conservation v. Brown*, 917 F.Supp. 1128 (S.D.Tex.1996) (Kent, J.). In 1987, the NMFS issued regulations to protect the threatened and endangered sea turtles. *See* 52 FED.REG. 24244 (June 29, 1987); Administrative Record ("AR") II.A.1; AR II.C.7.[4] Because it was determined that shrimping activities were a "major source of mortality of sea turtles," members of the TSA are currently subjected to quite stringent regulations regarding their shrimping activities. Specifically, the amended regulations require the installation and year-round use of a turtle excluder device in their trawls by most shrimpers. *See* 50 C.F.R. § 227.72; AR II.D.8.[5]

On June 11, 1996, NMFS issued a biological opinion which directly implicated recreational fishing activity in the regular takings of threatened and endangered species of sea turtles. As a consequence of the government's alleged failure to regulate these activities that allegedly result in the taking of threatened or endangered sea turtles, the TSA filed suit in this Court on June 13, 1997. Plaintiff makes two allegations in its Complaint: 1) Defendants' failure to enforce the ESA with respect to recreational fishing waters results in the TSA's membership being subject to unnecessary regulation and enforcement action; and 2) Defendants have unlawfully failed to designate critical habitats for threatened or endangered sea turtles,

---

**4.** The Secretary of Commerce has delegated his ESA responsibility over sea turtles to the NMFS.

**5.** Incidental capture and drowning of sea turtles by shrimp trawlers is a significant source of mortality for sea turtles. Research programs using onboard observers have documented the capture and drowning of sea turtles in shrimp trawls in both the Gulf of Mexico and the Atlantic. Although it is not possible to determine from these data precisely how many turtles drown in shrimp trawls each year, NMFS estimates that this figure is in excess of 11,000.
52 FED.REG. 24244 (June 29, 1987).

again resulting in unnecessary regulation of TSA members. Plaintiff seeks declaratory and injunctive relief. Specifically, Plaintiff asks the Court to enjoin Defendants from future ESA violations and to compel them "to carry out their mandated responsibilities under the ESA."

## II. STANDING

■ Whether a party has "alleged a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues" is "the gist of the question of federal standing." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The threshold question of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *see also Bennett v. Spear,* —— U.S. ——, ——, 117 S.Ct. 1154, 1160, 137 L.Ed.2d 281 (1997). To establish standing under Article III of the Constitution, a plaintiff must show that: 1) he has suffered an injury in fact that is concrete and particularized; 2) that is a causal connection between the injury and the conduct complained of—that such injury is fairly traceable to the conduct of the defendant; and 3) that is likely, rather than speculative, that such injury is redressable by the Court. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Plaintiffs bear the burden of establishing these three elements. *See Lujan,* 504 U.S. at 561, 112 S.Ct. at 2136. In addition to the immutable requirements of Article III, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 474–75, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982). Relevant here is the "zone of interests" test, which asks "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

■ Because Plaintiff in this case cannot establish the "irreducible constitutional minimum" of standing, the Court need not reach, nor discuss, its prudential limitations. *See Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136. In their Complaint, Plaintiffs allege that Defendants' have failed to enforce provisions of the ESA, allowing known illegal takings of sea turtles in recreational fishing areas. Plaintiffs assert that this failure will biologically affect sea turtle populations, preventing their recovery to a point where regulatory restrictions on Plaintiffs' shrimp trawling vessels are no longer necessary. When, as here, a "plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but is ordinarily 'substantially more difficult' to establish." *Lujan,* 504 U.S. at 562, 112 S.Ct. at 2136 (quoting *Allen,* 468 U.S. at 758, 104 S.Ct. at 3328). Moreover, "suits challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their obligations ... [are] rarely if ever appropriate for federal-court adjudication." *Allen,* 468 U.S. at 759–60, 104 S.Ct. at 3329.

The injury alleged by Plaintiffs in this case is "unnecessary regulation and enforcement action." Assuming that Plaintiffs have identified a sufficient injury in fact, Plaintiffs fail to demonstrate how this injury is traceable to the challenged action of the Defendants or how this injury is redressable by this Court. One of the assumptions underlying Plaintiffs' claims is that Defendants' failure to regulate recreational areas increases or allows the continued imposition of stringent regulations upon TSA members. Plaintiffs, however, offer no evidence whatsoever that this assumption has merit—that this failure to act by the government causes, or is fairly traceable, to Plaintiffs' alleged injury. The Court finds such alleged chain of causation tenuous at best.

Plaintiffs also assume that regulation of recreation areas will result in less regulation of TSA members. Again, Plaintiffs offer no evidence regarding the correctness of this

assumption. Given the evidence submitted, and expressly noting that conjecture is insufficient, the Court finds it highly unlikely that increased regulation of recreational fishing areas will make an appreciable difference in the sea turtle population. Moreover, as a common-sensical matter, the Court finds it doubtful that the *increased* regulation of recreational fishing areas will result in the *decreased* regulation of commercial shrimpers. Indeed, given the fact that shrimp trawlers are arguably the largest source of mortality to sea turtles, it is highly unlikely that decreased regulation of shrimpers will result. Thus, assuming that Plaintiffs' have suffered an injury, and even assuming that such injury is caused by the government's failure to regulate recreational fishing areas, Plaintiffs cannot establish that such injury will be redressed by any action by the Court.

The Court agrees with Defendants that even if Plaintiffs were awarded all the relief they are seeking, the regulations imposed upon the Plaintiffs will remain in place. It is pure conjecture that any relief sought by Plaintiffs will result in the Secretary of Commerce exercising his discretion and easing the regulatory burden on Plaintiffs. Because Plaintiffs cannot show that it is "likely, as opposed to merely speculative," that their injury was caused by, and will be redressed by, a favorable decision from this Court, Plaintiffs lack standing in this case. *See Lujan,* 504 U.S. at 561, 112 S.Ct. at 2135–36; *see also Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 44, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976) (declaring that "unadorned speculation will not suffice to invoke the federal judicial power").

### III. CONCLUSION

The Court genuinely sympathizes with the burden ESA regulations place upon the TSA. It is an unfortunate reality of our modern world that the interests of humans and the other creatures of the world sometimes clash. Normally, in these situations, humans win. The ESA, however, was enacted to level this playing field. In such efforts, certain obligations are placed upon humans. Here,

those obligations are manifested in Plaintiffs being subjected to stringent regulations. Although the Court appreciates Plaintiffs' novel attempts to establish standing in this case, unfortunately for Plaintiffs, such arguments fail as having no basis in law.[6]

Because Plaintiffs cannot establish standing in this case, the Court need not reach Defendants' arguments that Plaintiffs have failed to state a claim upon which relief can be granted. For the above reasons, Defendants' Motion to Dismiss is **GRANTED.** All of Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the Fifth Circuit Court of Appeals as may be appropriate in due course.

**IT IS SO ORDERED.**

---

**6.** From past litigation, the Court's has found that the Federal Defendants in this case are genuinely concerned with the fate of the sea turtles, and have in the past properly and conscientiously

carried out their duties under the Endangered Species Act. As previously stated, this Court expects no less, and can require no more.